FILED & JUDGMENT ENTERED
David E. Weich

Aug  31  2009

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | 08-10768/Chapter 11 Proceeding |
| | ) | |
| ANATOLI I. KARATCHOUN | ) | |
| a/k/a Point West Excavation, LLC | ) | ORDER CONFIRMING CHAPTER 11 PLAN |
| and wife, LYUBOV KARATCHOUN, | ) | |
| | ) | |
| Debtors. | ) | |

    **THIS MATTER COMING ON FOR HEARING on July 22, 2009 before the Bankruptcy Judge Presiding over the regular term of Bankruptcy Court for the Asheville Division for July, 2009 on order approving disclosure statement and fixing time for filing acceptances or rejections of plan, combined with notice thereof, the debtors/debtors-in-possession appearing with their attorney of record, David G. Gray, the Bankruptcy Administrator appearing through Alex A. Kenny and creditors, William McCoy and Jean McCoy, appearing, William McCoy made a statement to the Court, affirmations were provided to the Court verifying all of the requirements of 11 USC Section 1129(a) about the proposed plan, and the Court made its findings and entered its order:**

    1. The debtors' disclosure statement and Chapter 11 plan were filed on January 22, 2009 (refiled on January 23, 2009 to comply with Court's defective filing notice) and by notice dated January 26, 2009 hearing on approval of the disclosure statement was scheduled for February 19, 2009.

    2. At the February 19, 2009 hearing, the matter was continued to March 18, 2009.

    3. At the March 18, 2009 hearing, the matter was continued to April 22, 2009.

    4. On March 18, 2009, the debtors filed their amended/approved disclosure statement.

    5. On April 22, 2009, the Court entered a notice of confirmation hearing scheduling hearing for June 17, 2009.

6. On May 29, 2009, the debtors filed their second amended approved disclosure statement and amended Chapter 11 plan.

7. On June 1, 2009 the Court entered order approving the disclosure statement and setting confirmation for July 22, 2009.

8. A copy of the June 1, 2009 order, the amended Chapter 11 plan, the second amended approved disclosure statement and a ballot for voting on the plan were forwarded to all creditors and other parties in interest on June 18, 2009 setting July 17, 2009 as the last day for filing objections to the plan.

9. Ballots were properly provided to all 11 U.S.C. Section 502 claimants and/or interest holders and sufficient ballots were returned/filed to satisfy the confirmation requirements of accepting the plan pursuant to 11 U.S.C. Section 1126 and Section 1129.

10. The plan complies with applicable provisions of Chapter 11 of the Code.

11. The proponent of the plan complies with applicable provisions of the Code.

12. The plan has been proposed in good faith and not by any means forbidden by law.

13. Any payment made or to be made by the proponent, by the debtors or by a person issuing securities or acquiring property under the plan for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, have been approved by or is subject to the approval by the Court as reasonable.

14. The proponents of the plan have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor, an affiliate of the debtors participating in a joint plan with the debtors, or a successor to the debtors under the plan; and the appointment to or continuance in such office of such individual is consistent with the interests of creditors and equity security holders and with public policy.

15. The proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtors, and the nature of any compensation for such insider.

16. Any governmental regulatory commission with jurisdiction after confirmation of the plan over the rates of the debtors has approved any rate change provided for in the plan or such rate change is expressly conditioned on such approval.

17. With respect to each impaired class of claims or interest, each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value as of the effective date of the plan that is not less than the amount that such holder would so receive or retain if the debtors were liquidated under Chapter 7 of this title on such date or if section 1111(b)(2) of the Code applies to the

claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim, property of a value as of the effective date of the plan that is not less than the value of such holder's interest in the estate's interest in the property that secures such claim.

18. With respect to each class of claims or interest, such class has accepted the plan or such class is not impaired under the plan or confirmation is entered under Section 1129(b) as indicated in paragraph 20 below.

19. Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that: (a) with respect to the claim of a kind specified in Section 507(a)(1) or 507(a)(2) of the Code on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim; (b) with respect to a class of claims of a kind specified in Sections 507(a)(3), 507(a)(4), 507(a)(5) 507(a)(6) or 507(a)(7) of the Code, each holder of a claim of such class will receive, if such class has accepted the plan, deferred cash payments of a value as of the effective date of the plan equal to the allowed amount of such claim; or, if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and (c) with respect to a claim of a kind specified in Section 507(a)(8) of the Code, the holder of such claim will receive on account of such claim deferred cash payments over a period not exceeding five (5) years from the date of assessment of such claim of a value as of the effective date of the plan equal to the allowed amount of such claim.

20. At least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by an insider.

21. Confirmation of the plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor or any successor to the debtors under the plan unless such liquidation or reorganization is proposed in the plan.

22. All fees payable under Section 1930 of Tile 28 as determined by the Court at the hearing on confirmation of the plan have been paid or the plan provides for the payment of all such fees on the effective date of the plan. All reports and quarterly fees shall be filed and paid within 30 days of confirmation and before the case is closed.

23. If applicable, the plan provides for the continuation, after its effective date, of payment of all retiree benefits, if any, as that term is defined in Section 1114 of the Code at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Code at any time prior to confirmation of the plan for the duration of the period the debtor has obligated itself to provide such benefits.

24. Notwithstanding section 510(a) of the Code, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the Court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interest that is impaired under and has not

**accepted the plan. The proponent has requested such confirmation consideration and the Court has confirmed the plan.**

**25. For the purpose of 11 U.S.C. Sections 1129(a) and (b), if applicable, the condition that a plan be fair and equitable with respect to a class includes the following requirements: (a) with respect to a class of secured claims, the plan provides that the holders of such claims retain the lien securing such claims whether the property subject to such liens is retained by the debtor or transferred to another entity to the extent of the allowed amount of such claims in that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim of a value as of the effective date of the plan of at least the value of such holder's interest in the estate's interest in such property; (b) for the sale subject to Section 363(f) of the Code of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale and the treatment of such liens on proceeds under clause (i) or (iii) of such subparagraph or for the realization of such holders of the indubitable equivalent of such claims; (c) with respect to a class of unsecured claims, the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property; (d) with respect to a class of interest, the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value as of the effective date of the plan equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest or the holder of any interest that is junior to the interest of such class will not receive or retain under the plan on account of such junior interest any property.**

**26. The debtors-in-possession are entitled to the discharge as described in the plan and confirmation order of the Court.**

**THEREFORE, IT IS ORDERED that the attached plan of the debtors is confirmed and the Chapter 11 discharge is entered discharging all debts pursuant to the plan with the confirmed plan and evidences of indebtedness issued by the reorganized debtors reflecting any and all future indebtedness of the reorganized debtor and the Chapter 11 plan requirements.**

**This Order has been signed**                                                       **United States Bankruptcy Court**
**electronically. The judge's**
**signature and court's seal**
**appear at the top of the Order.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | 08-10768/Chapter 11 Proceeding |
| | ) | |
| ANATOLI I. KARATCHOUN | ) | |
| a/k/a Point West Excavation, LLC | ) | CONFIRMED CHAPTER 11 PLAN |
| and wife, LYUBOV KARATCHOUN, | ) | |
| | ) | |
| Debtors. | ) | |

The plan provides for creditors to be paid as follows:

CLASS 1. ADMINISTRATIVE CLAIMS: The plan will first pay all administrative claims including but not exclusively court costs, quarterly fees (if any), accountant(s), creditor committee expenses, attorney for the creditors committee (if any), attorney(s) for the debtors/debtors-in-possession and any other administrative claims so ordered by the Court. These costs are estimated to be approximately $50,000.00. *Proviso: all pre-confirmation monthly reports, quarterly administrative reports and quarterly fees will be filed and paid within 30 days of confirmation and before the case is closed.*

CLASS 2. ADMINISTRATIVE TRADE CREDITORS: The debtors/debtors-in-possession do not believe there will be any administrative trade creditors; however, if administrative trade creditors including tax claimants are determined, these creditors shall be paid in full by regular quarterly payments for a period of one (1) year at eight percent (8%) simple annual interest with payments to begin at the end of the first full calendar quarter after substantial consummation and each consecutive quarter thereafter for the one year period.

CLASS 3. IMPAIRED SECURED CLAIM OF ALLEN MOSS of approximately $275,000.00 secured by real property (approximately 11 acres), Serenity Forest, Asheville, Buncombe County, North Carolina; the allowed secured claim will be refinanced for a seven (7) year time period with interest at five percent (5%) simple annual percentage rate. Interest only payments will begin in January, 2010 and the principal and accrued interest will be paid from sale of lots in the Serenity Forest subdivision, Buncombe County, North Carolina. At this time there are 11 lots in the development secured by this claim. The value of each lot is a minimum of $40,000.00 to $75,000.00/plus. Claimant's lot release price will be no less than $30,000.00 per lot. [The subdivision's infrastructure will be completed in 2010 with lots initially for sale in 2010.] This Chapter 11 plan requires a lot release of this claimant when paid 57% of the lots net sales price receipt(s) but no less than $30,000.00. Failure to provide the lot release pursuant to the plan requirements shall subject the creditors to contempt of court proceedings and court-ordered release of the lien. The Serenity Forest development plan may be altered, subject to market conditions, to facilitate an easier sale of the property. The debtors reserve the right to pre-pay this indebtedness at any time.

CLASS 4. IMPAIRED SECURED CLAIM OF ASHEVILLE SAVINGS BANK of approximately $42,239.50 secured by title lien on 2007 Cadillac Escalade. Debtor(s) will pay the allowed secured claim by monthly payments amortized for 60 months at five percent (5%) simple annual percentage rate with the first payment the first full month after confirmation and each consecutive month thereafter for 60 months. The allowed secured claim is $35,300.00 and the monthly payment is $667.00. The creditor shall retain its lien.

CLASS 5. UNIMPAIRED SECURED CLAIM OF BLUE RIDGE SAVINGS BANK of approximately $195,000.00 secured by real property and improvements located at 33 Balsamwood Road, Asheville Buncombe County, North Carolina; the allowed secured claim will be paid by sale of the property within two (2) years of completion but no later than December 31, 2010. The creditor shall be paid per its contract agreement with debtors and shall retain its lien.

CLASS 6. UNIMPAIRED SECURED CLAIM OF BLUE RIDGE SAVINGS BANK of approximately $773,000.00 secured by real property and improvements located at 15 Brookside Drive, Asheville Buncombe County, North Carolina; the allowed secured claim will be paid by sale of the property within two (2) years of completion but no later than December 31, 2010. The creditor shall be paid per its contract agreement with debtors and shall retain its lien.

CLASS 7. IMPAIRED SECURED CLAIM OF HSBC AUTO FINANCE of $20,665.58 secured by title lien on 2005 Ford F-250. Debtor(s) will pay the allowed secured claim by monthly payments of $301.94 based on 60 month amortization at five percent (5%) simple annual percentage rate with the first payment the first full month after confirmation and each consecutive month thereafter for 60 months. The allowed secured claim is $16,000.00. The creditor shall retain its lien.

CLASS 8. IMPAIRED SECURED CLAIM OF WILLIAM E. McCOY AND JEAN M. McCOY of approximately $300,000.00 secured by real property (approximately 17 acres), Serenity Forest subdivision, Asheville, Buncombe County, North Carolina; the allowed secured claim will be refinanced for a seven (7) year time period with interest at five percent (5%) simple annual percentage rate. Interest only payments will begin January 1, 2010 and principal and accrued interest to be paid from the sales of lots in the Serenity Forest subdivision, Buncombe County, North Carolina. There are 22 lots in the development secured by this claim. The value of each lot is a minimum of $40,000.00 to $75,000.00/plus. Claimant's lot release price will be no less than $30,000.00 per lot. [The subdivision's infrastructure will be completed in 2010 with lots initially for sale in 2010.] This Chapter 11 plan requires a lot release of this claimant when paid 57% of the lots net sales price receipt(s) but no less than $30,000.00. Failure to provide the lot release pursuant to the plan requirements shall subject the creditors to contempt of court proceedings and court-ordered release of the lien. The Serenity Forest development plan may be altered, subject to market conditions, to facilitate an easier sale of the property. The final amount of the secured claim will be determined by objection to claim and hearing before the Court. The debtors reserve the right to pre-pay the indebtedness at any time.

2

CLASS 9. IMPAIRED SECURED CLAIM OF CATERPILLAR FINANCIAL SERVICES in the amount of $225,000.00 secured by (a) Caterpillar single drum-compactor, Model #CS-533E, Serial #DAK00477 with value of $35,000.00; (b) Caterpillar crawler mounted compact excavator, Model #304-CCR, Serial #PPK01547 with value of $25,000.00; (c) Caterpillar multi terrain loader, Model #287B, Serial #ZSA03444 with value of $25,000.00; (d) Caterpillar crawler mounted hydraulic excavator, Model #320CL, Serial #PAB05581 with value of $85,000.00; and (e) Caterpillar truck-type tractor, Model #D6N XL, Serial #AKM02155 with value of $85,000.00. Pursuant to the consent order entered herein, the debtors/debtors-in-possession shall provide payments (pre-confirmation adequate protection payments) for the equipment by an amortization of the secured debt for 60 months at the Till interest rate (5.25% simple annual percentage rate) payable on the 15th day of each month, with the exception of the month of June, 2009 as follows:

   a. The first payment of $4,271.85 in May, 2009;
   b. Payment of $4,500.00 per month for the 2nd month (July, 2009) through 14th month (June, 2010);
   c. The June, 2009 payment will be paid on or before December 31, 2009;
   d. Payment of $4,271.85 per month for the 15th month (July, 2010) through 48th month (May, 2013); and
   e. Payment of $4,043.70 for the 49th month (June, 2013) to 60th month (May, 2014).

The debtors/debtors-in-possession have full ownership and possession) of all five (5) pieces at this time, subject to the lien of movant.

The default provisions of the Chapter 11 plan shall govern, additionally, if the payments are not paid by the last day of the month when due, then the debtor/debtor-in-possession is in default on the payments and, with ten(10) days written notice from movant to the debtors/debtors-in-possession and the debtors/debtors-in-possession failing to cure the default, movant may engage in its normal state law remedies.

The balance of movant's claim shall be an unsecured claim in the Chapter 11 proceeding and movant agrees to support the Chapter 11 plan of the debtors/debtors-in-possession with an acceptance of the plan.

The creditor shall retain its lien(s).

CLASS 10. PRIORITY TAX CLAIMS: Allowed claims of governmental units to the extent they are entitled to priority under 11 USC Section 507(a)(8) shall be deferred and paid over a five (5) year period from the date of the order for relief with interest on a monthly basis. Interest for the I.R.S. is provided for in I.R.C. Section 6621 and for other priority tax claims such as North Carolina Department of Revenue, the legal rate applies. Payments will begin the next month after the first full quarter after the effective date and each consecutive time period thereafter until the allowed claim is paid. The debtors do not believe that there are any claims in this class.

3

**CLASS 11. PRIORITY CLAIMS:** After determination of priority status, all claims superior to tax claims shall be paid in full within five (5) years of confirmation plus six percent (6%) interest per annum for the five year time period. Payments will be quarterly. There appears to be no claims in this class at this time.

**CLASS 12. IMPAIRED UNSECURED CLAIMS** of approximately $628,473.67 (including unsecured deficiency claims of secured creditors, if any). Allowed unsecured claim shall be paid from the sale of lots in the Serenity Forest subdivision over the next five (5) years. After the secured creditors in Classes 3 and 8 are paid in full and payment of development cost, income tax (capital gain) and property taxes and selling costs, the unsecured creditors will be paid from lot sales. The debtors estimate cost of approximately $450,000.00 cost to complete the development, $650,000.00 to secured creditors, taxes, insurance and other expenses, and selling cost of $200,000.00 for total of approximately $1.3 million. If all lots sell for an average of $50,000.00 per lot, gross receipts would be $1,650,000.00, leaving approximately $350,000.00 for allowed unsecured creditors (payment of approximately 55%). The debtors will report annually to creditors for five (5) years beginning January 1, 2011 as to lot sales and the cost of sale with payments as available to Class 12 made from the net proceeds after the secured creditors and costs are paid; annual payment shall be made in conjunction with annual report. The minimum payout to this class will be 25% to be paid on or before January 1, 2015, unless sooner paid by the payment provisions above.

**DEFINITIONS:**

> <u>Allowed Claim:</u> An allowed claim is one listed by the debtors on their petition and not designated by the debtors as being contingent/disputed/unliquidated or is a claim filed by or on behalf of the creditor, either of which is not objected to by the debtors or, if objected to by the debtors, allowed by the Court (subject to appeal) in some amount.
>
> <u>Effective Date:</u> Effective date is the date from which payment dates are computed for each class of creditors and the date at which administrative claim amounts are due to be paid unless other treatment is ordered, agreed upon or provided for in the plan and not objected to. The effective date is no more than 120 days from the entering of the order of confirmation unless the Court extends the time due to litigation which might materially affect implementation of the plan; see below for further description.

**PROVISO:** Notwithstanding any of the terms and conditions of the plan, disputed claims shall be paid only upon allowance by the Court. Upon confirmation, the debtors/debtors-in-possession will be revested with their assets subject only to all outstanding liens which are not avoidable by the debtors/debtors-in-possession under the provisions of Title 11 of the Code, and entitled to manage their affairs without further orders of this Court. However, subject to

4

the debtors/debtors-in-possession being so revested with their assets, the Court will retain jurisdiction until the plan has been fully consummated, for adversaries, objections to claims, collecting accounts receivables, avoidance actions, post-confirmation rights involving creditors or other matters pending post-confirmation, or as otherwise indicated in this plan or confirmation order. The debtors/debtors-in-possession specifically reserve the right to object to any and all claims, post-confirmation, and all claims are deemed objected to until the plan is substantially consummated and/or allowed by the Court.

EFFECTIVE DATE: The effective date of the debtors/debtors-in-possession plan will be the date of substantial consummation which is contemplated to be approximately 60 to 90 days after confirmation.

## REMEDY OF CREDITOR

Remedy of Creditors in event of default: The debtors/debtors-in-possession shall be deemed in default under the terms and provisions of this plan in the event they fail to carry out any of the terms and provisions imposed upon them by said plan and said condition is not corrected by them within 90 days after receipt of written notice of default from any creditor owed money hereunder at the time of default. Upon full default and within 75 days of full default, the debtors have the option to liquidate the remaining Chapter 11 estate assets by public auction regularly conducted by a licensed auctioneer. Otherwise, if the public auction option is not exercised by debtors, in the event that the debtors/debtors-in-possession shall fully default under the terms and conditions of this plan, the creditor hereunder affected by the default may pursue its normal legal nonbankruptcy remedies.

## DISCHARGE

Pursuant to 11 USC Sections 1141, 523, 524 and 727, any and all amounts due by the debtors/debtors-in-possession to their creditors shall be discharged (upon confirmation). The debtors/debtors-in-possession shall issue promissory notes to the creditors reflecting the confirmed plan and new indebtedness to the creditors.

This the /8th day of August, 2009.

_____
Anatoli I. Karatchoun, Debtor

_____
Lyubov Karatchoun, Debtor

5

_____
David G. Gray, Attorney for Debtors
N.C. State Bar No. 1733

**WESTALL, GRAY, CONNOLLY & DAVIS, P.A.**
81 Central Avenue
Asheville, North Carolina 28801
Tel: (828) 254-6315
Fax: (828) 255-0305

6